UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:12-cv-61079-KMW

SECURITIES AND                           )
EXCHANGE COMMISSION,                     )
                                         )
           Plaintiff,                    )
v.                                       )
                                         )
JOSEPH J. REPKO,                         )
MICHAEL M. CIMINO, and                   )
SURE TRACE SECURITY CORP.                )
                                         )
           Defendant.                    )
_____)

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW FOR A FINAL JUDGMENT
SETTING CIVIL PENALTY AMOUNT AGAINST DEFENDANT
<u>SURE TRACE SECURITY CORP.</u>**

Plaintiff Securities and Exchange Commission moves this Court for a final judgment ordering Defendant Sure Trace Security Corp. to pay a civil penalty of $28,000. The proposed penalty would punish Sure Trace for its involvement in a stock purchase kickback scheme and would deter future violations of the securities laws.

### I. FACTUAL AND PROCEDURAL HISTORY

The Commission filed its complaint on June 4, 2012, alleging, among other things, that Sure Trace violated Section 17(a)(1) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Exchange Act Rule 10b-5. D.E. 1. The Complaint sought injunctive relief, disgorgement of ill-gotten gains, prejudgment interest, and a civil penalty against Sure Trace.

On November 28, 2012, the Court issued an order granting the Commission's motion for default judgment against Sure Trace and entered a default judgment against the company. (D.E.

27).  The Default Judgment enjoined Sure Trace from future violations of Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5.  It also required the company to pay, on a joint and several basis with Defendants Michael Cimino and Joseph Repko, disgorgement plus prejudgment interest of $31,662.18.  (*Id.* at 4).  Finally, the Default Judgment ordered Sure Trace to pay a civil penalty in an amount to be determined on motion of the Commission. (*Id.*).

The Default Judgment also provided, in pertinent part:

> By virtue of its default and failure to respond to the complaint, Sure Trace is deemed to have admitted the allegations of the Complaint, and liability is established against it . . . .  Accordingly, the Court finds Sure Trace committed the violations alleged in the complaint.

(*Id.* at 2).  Accordingly, the Court should deem the allegations in the complaint true for purposes of this motion to set a penalty against Sure Trace.

### A.  Factual Allegations Of The Complaint Deemed Admitted

#### 1.  The Fraudulent Scheme

Beginning in late April 2009, a witness cooperating with the FBI and Cimino, who was then president of Sure Trace, began discussing by telephone a large pension fund that through its trustee, a fiduciary of the fund, could purchase Sure Trace stock through a stock purchase agreement.  (D.E. 1, ¶ 15).  In exchange, Sure Trace would provide the trustee with a 30% "giveback," payable to a "shell company."  (*Id.*).  After several conversations, they agreed Cimino would come to South Florida for a face-to-face meeting.  (*Id.*).

On May 7, 2009, Repko and Cimino met in Broward County, Florida with the cooperating witness and an FBI agent who posed as the friend of the corrupt trustee, to finalize an illicit scheme involving Sure Trace stock.  (D.E. 1, ¶ 17).  At the meeting, Cimino explained

that because of an injunction against him for Securities Act violations, he had to "step back," and Repko would be making the decisions for Sure Trace. (D.E. 1, ¶ 18).

As part of the scheme, Repko, Cimino, the cooperating witness, and the FBI agent posing as the friend of the corrupt pension fund trustee agreed the pension fund would purchase $20,000 worth of Sure Trace stock in exchange for a 30% kickback to the trustee. In addition, they agreed the cooperating witness, as a middleman, would receive millions of shares of the company's stock for introducing the parties to the deal. (D.E. 1, ¶ 19). The FBI agent told the defendants the purported pension fund trustee had a fiduciary responsibility to the pension fund's investors. (*Id.*).

To conceal the illicit payment, Repko and Cimino agreed to pay the kickback to a consulting company and enter into a phony consulting agreement. (D.E. 1, ¶ 20). Repko and Cimino understood the bogus consulting company would not be performing actual consulting services. (*Id.*). The FBI agent told Repko and Cimino that an invoice would be prepared to provide a "paper trail" and that he, the corrupt trustee, and the pension fund's manager would split the kickback paid to the consulting company. (*Id.*).

Acknowledging the consulting agreement was a sham, Repko told the FBI agent and the cooperating witness they needed documentation to satisfy the company's auditors. Repko also told them he and Cimino did not have an issue with the 30% payment but did not want to know what happened to the money after they paid it to the consulting company. (D.E. 1, ¶ 21).

2. The First Restricted Stock Transaction And Kickback

Pursuant to a May 2009 subscription agreement between the pension fund and Sure Trace, the pension fund agreed to purchase about 66.7 million restricted shares of Sure Trace stock for $20,000. Repko signed the agreement on behalf of Sure Trace. (D.E. 1, ¶ 22). In

tandem with the subscription agreement, Sure Trace and the bogus consulting company entered into a sham consulting agreement, which Repko signed on Sure Trace's behalf.  (D.E. 1, ¶ 23).

On May 12, 2009, the FBI wired $20,000 to Sure Trace's bank account.  Two days later, on May 14, Sure Trace, through Repko, mailed a $6,000 kickback, in the form of a check, to the bogus consulting company with the notation "consulting SSTY" on the memo line.  (D.E. 1, ¶ 24).

On May 22, Cimino sent Sure Trace's transfer agent a transmittal letter stating that it was from ". . . new Company President Joe Repko" authorizing the issuance of approximately 66.7 million shares of Sure Trace stock to the pension fund.  On May 27, Repko sent a letter to Sure Trace's transfer agent requesting the issuance of 16,666,667 Sure Trace restricted shares to the cooperating witness.   The transfer agent subsequently issued the stock.  (D.E. 1, ¶ 25).

### 3.  The Second Restricted Stock Transaction and Kickback

Shortly after completing the first transaction, Repko and Cimino agreed with the cooperating witness to do another deal in which the purported pension fund would buy Sure Trace stock in return for another kickback.  (D.E. 1, ¶ 30).

In early June 2009, Repko sent a second subscription agreement to the FBI agent posing as the friend of the purported pension fund trustee.  The pension fund trustee purportedly signed the agreement and returned it on June 10.  Pursuant to the agreement, the pension fund agreed to purchase 66.7 million restricted shares of Sure Trace stock for $20,000.  (D.E. 1, ¶ 31).

On June 8, the FBI wired $20,000 to Sure Trace's bank account.  The next day, Sure Trace, through Repko, mailed a $6,000 kickback, in the form of a check, to the bogus consulting company, with the notation "consulting SSTY" on the memo line.  (D.E. 1, ¶ 32).

On June 11, 2009, Repko sent a letter to Sure Trace's transfer agent requesting the issuance of restricted shares of Sure Trace stock to the pension fund and the cooperating witness. (D.E. 1, ¶ 33). The letter to the transfer agent included a written consent to the issuance of almost 66.7 million shares of Sure Trace stock to the pension fund and 8,333,333 shares to the cooperating witness. (D.E. 1, ¶ 34). The next day, Sure Trace issued stock certificates to the pension fund and the cooperating witness in these amounts. (D.E. 1, ¶ 35).

## II.  MEMORANDUM OF LAW

The Commission seeks a civil penalty against Sure Trace pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 77u(d), which both establish the same three tiers of penalties. Under the First Tier for both statutes, the Court may impose a penalty of up to: (i) $7,500 for a natural person or $75,000 on an entity for each violation; or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation. Under the Second Tier, the Court may impose a penalty of up to: (i) $75,000 for a natural person or $375,000 on an entity for each violation; or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation. The Second Tier applies where the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement. Finally, under the Third Tier the Court may impose a penalty of up to: (i) $150,000 on a natural person or $725,000 on an entity for each violation; or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation.[1] *SEC v. KS Advisors*, *Inc.*, No. 2:04-CV-105-FTM-29, 2006 WL 288227 at *3 (M.D. Fla. Feb. 6, 2006). The Third Tier applies to cases in which the requirements of a Second Tier penalty are present *and* the violation directly or

---

[1] Under the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, these amounts were adjusted to account for inflation, based on violation dates. 17 C.F.R. §§ 201.1001-1004, Tbl. II-IV to Subpt. E. The adjusted rates apply to this case because the defendants' fraudulent conduct occurred after the adjustment date of March 3, 2009. *See* 17 C.F.R. § 201.1004, Tbl. IV to Subpt.

indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. *Meadows v. SEC*, 119 F.3d 1219, 1228 (5th Cir. 1997).  Because of its blatant fraud in this case, the Court should impose a third-tier penalty of $28,000 against Sure Trace, which corresponds to the amount of its pecuniary gain.

Civil penalties are designed to punish the violator and deter future violations of the securities laws. *SEC v. Moran,* 944 F. Supp. 286, 296 (S.D.N.Y.1996).  In determining whether to impose civil penalties and the amount of the fine, courts look to a number of factors, including: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *SEC v. U.S. Pension Trust Corp.*, 2010 WL 3894082 at *25 (S.D. Fla. Sept. 30, 2010) (citing *SEC v. Opulentica, LLC,* 479 F. Supp. 2d 319, 331 (S.D.N.Y.2007)).  While these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a "discretionary nature" and each case "has its own particular facts and circumstances which determine the appropriate penalty to be imposed." *Moran,* 944 F. Supp. at 296-97.

Sure Trace's conduct warrants a penalty in the amount of its pecuniary gain, $28,000. First, Repko and Cimino's conduct, which is imputed to Sure Trace under the doctrine of *respondeat superior*, was egregious.  *Hunt v. Miller,* 908 F.2d 1210, 1214-15 (4th Cir. 1990) (brokerage firm was liable where stock broker defrauded group of investors in real estate transaction and used the firm's office when dealing with investors); *In re Villa,* 261 F.3d 1148, 1152 (11th Cir. 2001) (bankruptcy decision, explaining that principles of *respondeat superior* are

not displaced by control person provision); *Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1118-19 (5th Cir. 1980) (same).  Repko and Cimino deliberately sought out and arranged the stock purchase kickback scheme with the cooperating witness.  Repko and Cimino's stock fraud scheme included illicit payments made to a phony corporation pursuant to sham invoices.

Further, through Repko and Cimino, Sure Trace acted with the highest level of scienter.[2] Repko, Cimino, and the cooperating witness planned and executed the kickback scheme, including transferring funds, issuing the stock, and paying what they knew to be a phony invoice to cover up the scheme.  In addition, Repko acted to conceal Sure Trace's scheme by assuming from Cimino the primary role at the company, allowing Cimino to "step back" because Cimino was subject to a prior injunction against securities law violations.  In addition, because the conduct occurred in two separate transactions, it was not isolated.

The final factor, Sure Trace's financial condition, carries little impact in this case.  The company did not appear or respond to this lawsuit, and the Court ultimately entered a default judgment against it. (D.E. 27).  As a result, Sure Trace has not shown financial hardship.

Given the egregiousness of Sure Trace's conduct and its high degree of scienter, and the need to deter other companies from this type of deliberate attempt at market manipulation, the $28,000 penalty we seek against Sure Trace is warranted and not excessive.  This is all the more so because the Commission could have sought a much larger penalty against the company by

---

[2] Courts have defined scienter as a state of mind embracing intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).  The Eleventh Circuit has concluded scienter may be established by a showing of knowing misconduct or severe recklessness. *SEC v. Carriba Air*, 681 F.2d 1318, 1322-24 (11th Cir. 1982).  In addition, Cimino and Repko's scienter is imputable to SSTY. *SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 812 (2nd Cir. 1975); *SEC v. Manor Nursing Centers*, 458 F.2d 1082, 1096 n.16 (2nd Cir. 1971) (scienter of an individual who controls a business entity may be imputed to that entity).

seeking penalties of up to $150,000 *per violation,* which would substantially exceed the penalty we are seeking.

### III.  CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Commission respectfully requests the Court enter a final judgment against Sure Trace imposing a civil penalty of $28,000.

Respectfully submitted,

March 28, 2013        By:      s/Robert K. Levenson
Robert K. Levenson
Regional Trial Counsel
Fla. Bar No. 0089771
Attorney for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6341
Facsimile: (305) 536-4154
Email: levensonr@sec.gov

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 28, 2013, I electronically filed the above document using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel for records identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel for parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Robert K. Levenson
Robert K. Levenson, Esq.

## SERVICE LIST

**BY U.S. MAIL**

Sure Trace Security Corp.
c/o Joseph J. Repko
8195 SE Governers Way
Hobe Sound, FL 33455

Joseph J. Repko
8195 SE Governers Way
Hobe Sound, FL 33455

Michael M. Cimino
7925 Ridge Avenue, Apt. 1
Philadelphia, PA 19128